UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA A. BRESNAN,

                        Plaintiff,

v.

TOWN OF HENRIETTA, JACK MOORE, CRAIG ECKERT, and PETER MINOTTI,

                        Defendants.

**COMPLAINT**

Civil Action No.:

Plaintiff, Barbara A. Bresnan, by her attorneys, Underberg & Kessler LLP, Paul F. Keneally, Esq. and Alina Nadir, Esq., of counsel, alleges for her Complaint as follows:

### JURY DEMAND

1. Plaintiff, Barbara A. Bresnan, demands a trial by jury of all issues in this action.

2. Ms. Bresnan seeks to recover damages against Defendants, the Town of Henrietta (the "Town"), Jack Moore, Craig Eckert, and Peter Minotti (collectively, "Defendants"), for unlawful discrimination, hostile work environment, sexual harassment, and retaliation based upon Plaintiff's sex and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., (hereinafter "Title VII"), 42 U.S.C. § 1983 (hereinafter "§ 1983"), and the New York State Human Rights Law § 290 et seq. of the Executive Law of the State of New York ("NYSHRL").

3. Ms. Bresnan previously filed a claim with the Equal Employment Opportunity Commission ("EEOC") Charge No. 525-2015-00155.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the Plaintiff's claims on this action pursuant to the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. § 2000e-5(f)(3)(Title VII), 28

U.S.C. § 1331, and 28 U.S.C. § 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiff's claims under state statutory law.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

6. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7. Plaintiff is an individual who resides at 109 Camelot Drive, Rochester, New York 14623.

8. At all times relevant to the Complaint, Plaintiff was, and remains, Defendants' "employee" as defined by Title VII and NYSHRL.

9. Defendant the Town is a municipality in Monroe County, New York State.

10. Defendant Jack Moore served as the Town's Town Supervisor at all times relevant to this Complaint.

11. Defendant Craig Eckert is the Town's Deputy Director of Engineering and Planning.

12. Defendant Peter Minotti is the Town's Deputy Town Supervisor.

## FACTS

13. Ms. Bresnan began working for the Town of Henrietta as a Laborer in 2001 and was a well-performing employee.

14. In January 2014, former Town Supervisor Jack Moore assumed office and accordingly, became one of Ms. Bresnan's supervisors.

15. From the beginning of Mr. Moore's tenure, he made inappropriate comments to Ms. Bresnan, as well as to other female employees.

16. In January 2014, Mr. Moore repeatedly referred to Ms. Bresnan as "my girl" and commented on her clothing.

17. On or about January 28, 2014, Mr. Moore told Ms. Bresnan that "it's as cold as a witch's tit out there." When Ms. Bresnan indicated she did not know what that meant, Mr. Moore came close to her chest with a cupping motion of his hand, and stated, "Think about it. If you had a witch's tit in your hand. It's cold."

18. Upon information and belief, in or around February 2014, Mr. Moore learned that Ms. Bresnan is a lesbian.

19. In February 2014, Ms. Bresnan's work assignments began to change. She was assigned to work alone on jobs that required more than one person to complete. Ms. Bresnan also experienced greater scrutiny from her supervisors at that time.

20. In March 2014, Mr. Moore commented to Ms. Bresnan's co-worker that maybe the co-worker "…could take Barb shopping. She could use some help." Ms. Bresnan was present for that comment.

21. Also in March 2014, Ms. Bresnan heard Mr. Moore say to Barbara Chirdo, a member of the Town's Human Resources Department, as they passed by her, "Tell me she don't just look like a guy."

22. In April 2014, Ms. Bresnan's work assignment at the Town Hall building was changed, and she was replaced by a male employee.

23. The April 2014 work assignment change was not due to work performance; Ms. Bresnan's performance evaluations were all positive.

24. Mr. Moore also engaged in behavior meant to intimidate Ms. Bresnan.

25. On or about September 20, 2014, Ms. Bresnan was working in a town park. Mr. Moore was driving his vehicle nearby. He began driving towards Ms. Bresnan and then swerved when he was within a few feet of hitting her. He rolled down his window and said, "Oops, see, I'm nice. I missed you."

26. On or about September 24, 2014, seasonal employee Linda Elsbree told Ms. Bresnan that Mr. Moore told an employee, "Unfortunately, we have to accept certain people's lifestyles." Upon information and belief, Mr. Moore was referring to Ms. Bresnan.

27. In or around November 2014, Ms. Bresnan complained about the harassment and discrimination to Human Resources Director at the time, Barbara Chirdo.

28. Ms. Bresnan specifically complained that Mr. Moore was discriminating against her and that she was "scared".

29. Ms. Chirdo told Ms. Bresnan she would not investigate the complaint and told Ms. Bresnan to talk to a Town Board Member instead.

30. The Town took no action regarding Ms. Bresnan's complaints, nor did the Town even attempt to investigate the complaints.

31. In fact, the harassment and retaliation continued and even escalated.

32. On or about November 12, 2014, Mr. Eckert was videoed walking around and taking photographs of Ms. Bresnan's car in the employee parking lot.

33. On or about December 1, 2014, Mr. Eckert spoke to Ms. Bresnan's co-worker about her harassment complaint to Ms. Chrido, questioning why she made a complaint and stating that

if she did not make her complaint immediately then, "Fuck [her]. [She doesn't] have a valid issue."

34. On or about February 16, 2015, Ms. Bresnan was on-call for snow removal on sidewalks and parking lots of town facilities. Snow removal was necessary, but instead of calling Ms. Bresnan, Mr. Eckert, a member of the Town's Highway Department management, performed the work himself.

35. Such work is done by the Parks Department, not the Highway Department and especially not by management, but Ms. Bresnan was never called to come into work and was denied the opportunity for paid work.

36. After Ms. Bresnan reported these events to her union representative, Mr. Eckert unbelievably shoveled snow back onto sidewalks recently shoveled by Ms. Bresnan on Town property.

37. Upon information and belief, Mr. Eckert bragged about the events and said "now that dyke has something to do."

38. On or about February 21, 2015, Mr. Eckert again bypassed Ms. Bresnan when snow removal was needed. In fact, every member of the Parks Department was called except for Ms. Bresnan.

39. Ms. Bresnan drove to a Town building to see who was called in for the work, and she observed Mr. Eckert plowing himself, again violating the union contract specifically to prevent Ms. Bresnan from receiving the opportunity for paid work.

40. After her harassment complaint, not only was Ms. Bresnan replaced by a male employee after being removed from her assignment, Mr. Moore specifically stated that a male employee was chosen because "being a man, he was able to do certain things that Barb couldn't do," like use a ladder.

41. Mr. Moore made this statement despite the fact that Ms. Bresnan had been successfully performing her duties for two years prior to the job change.

42. Mr. Moore's comment demonstrated that the sole basis for Ms. Bresnan's job change was her gender and no other reason.

43. During the EEOC investigation, witnesses also stated that Mr. Moore stated that Ms. Bresnan "might as well be a man . . . because you can't tell she's a woman."

44. Ms. Bresnan found the hostile work environment and discrimination to be unbearable. She eventually needed to take a medical leave beginning in or around September 2015.

45. The EEOC investigation found that when Ms. Bresnan attempted to return to work, the Town would not allow her to do so and required Ms. Bresnan to undergo an Independent Medical Examination.

46. Ms. Bresnan had taken medical leaves previously and had never before been required to submit to an IME.

47. This delay caused Ms. Bresnan to lose additional pay. The EEOC found a "nexus" between Ms. Bresnan's complaints and the adverse treatment.

48. In addition, the Town refused to hire Ms. Bresnan's son as a seasonal worker in 2015, despite having done so in the past, and the EEOC found this was evidence of retaliation.

49. Mr. Minotti, as Deputy Town Supervisor, knew or should have known of the discrimination and harassment and did nothing to stop or remedy any of the illegal behavior.

50. More generally, the EEOC investigation found that the individuals responsible for equal employment opportunity in the Town were constrained by a system in which "the primary discriminator/harasser retains authority and control over their employment."

51. It further found that the Town's failure to take any action on internal discrimination

complaints prevented others from reporting such behavior and had a clear chilling effect on other employees.

52. Ms. Bresnan filed an EEOC Charge regarding the above-described discrimination and harassment.

53. After an investigation, the EEOC found reasonable cause to determine that the discrimination, harassment and retaliation occurred. See the probable cause determination attached hereto as **Exhibit A**.

## INJURIES

54. Ms. Bresnan experienced discriminatory behavior as soon as Mr. Moore took office as Town Supervisor. Her position was admittedly changed solely due to her gender, and she was subjected to repeated offensive and gender-based comments directly from the Town's top official. The environment led to a necessary medical leave after which she was retaliated against.

55. Ms. Bresnan's mental health suffered greatly as a result of the Town's conduct. She had nightmares about Mr. Moore. Mr. Moore continually attempted to intimidate Ms. Bresnan, asking co-workers about her partner and Ms. Bresnan's personal life. Ms. Bresnan sought medical care as a result and began medication at her medical provider's suggestion.

56. Mr. Moore even tried to interfere with Ms. Bresnan's partner's employment, telling her supervisor that she was responsible for stealing campaign lawn signs.

57. Ms. Bresnan's medical benefits for herself and her family were cut off due to Defendants' illegal actions.

58. Ms. Bresnan did not just suffer significant financial repercussions due to Defendants' actions.

59. Ms. Bresnan suffered extreme emotional issues due to the years-long fight with Defendants, the harassment she faced, and the distress she felt in losing the ability to properly provide for herself and her family.

60. She experienced mental anguish, stress, humiliation, and embarrassment.

61. As noted, Ms. Bresnan's EEOC complaint resulted in probable cause findings, and on October 10, 2018, she was issued a Right to Sue letter from the EEOC for the charge No. 525-2015-00155. (Exhibit B).

62. The Defendants undertook all of the actions and omissions alleged above either directly or through their agents who were authorized to take such actions and omissions.

### AS AND FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF
### UNDER TITLE VII AGAINST DEFENDANT TOWN OF HENRIETTA FOR
### UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

63. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

64. By and through their course of conduct as alleged above, the Town, and their agents willfully violated Title VII, 42 U.S.C. § 2000e et seq., by subjecting Plaintiff to a hostile work environment, discriminating against Plaintiff, and denying her equal terms and conditions of employment, harassing Plaintiff, retaliating against Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

65. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF
### UNDER TITLE VII AGAINST DEFENDANT TOWN OF HENRIETTA FOR
### UNLAWFUL RETALIATION

66. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

67. By and through their course of conduct as alleged above, the Town, and their agents

willfully violated Title VII, 42 U.S.C. § 2000e et seq., by retaliating against the Plaintiff.

68. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANT TOWN OF HENRIETTA FOR UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

69. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

70. By and through their course of conduct as alleged above, Defendant, Town of Henrietta, willfully violated New York State Human Rights Law by subjecting Plaintiff to a hostile work environment, discriminating against Plaintiff, and denying her equal terms and conditions of employment, harassing Plaintiff, retaliating against Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

71. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANT TOWN OF HENRIETTA FOR UNLAWFUL RETALIATION

72. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

73. By and through their course of conduct as alleged above, Defendant, Town of Henrietta, willfully violated New York State Human Rights Law by subjecting Plaintiff to a hostile work environment and materially altering the terms and conditions of her employment because of her gender and sex.

74. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR AIDING AND ABETTING UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

75. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

76. By and through their course of conduct as alleged above, Defendant Town of Henrietta willfully violated New York State Human Rights Law by harassing and treating the Plaintiff differently in retaliation.

77. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SIXTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR AIDING AND ABETTING FOR UNLAWFUL RETALIATION

78. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

79. By and through their course of conduct as alleged above, Defendants Moore, Eckert, and Minotti willfully violated the New York State Human Rights Law by harassing and treating the Plaintiff differently in retaliation.

80. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SEVENTH CLAIM FOR RELIEF UNDER SECTION 1983 AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR UNLAWFUL DISCRIMINATION AND RETALIATION

81. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

82. By and through their course of conduct as alleged above, Defendants Moore, Eckert, and Minotti violated Section 1983 by discriminating against Plaintiff, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her

sex and gender, and thereby depriving her of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

### AS AND FOR PLAINTIFF'S EIGHTH CLAIM FOR RELIEF UNDER SECTION 1983 AGAINST DEFENDANT TOWN OF HENRIETTA FOR UNLAWFUL DISCRIMINATION AND RETALIATION

83. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

84. By and through their course of conduct as alleged above, Defendant Town of Henrietta violated Section 1983 by discriminating against Plaintiff, harassing Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her sex and gender, and thereby depriving her of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that this Court:

(a) Accepts jurisdiction over this matter,

(b) Accepts, impanels and charges a jury with respect to the claims for relief; and

(c) Awards the following damages against Defendants:

   i. Back pay, front pay, and all benefits along with pre and post judgment interest, in amounts to be determined at trial;

   ii. Punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional and physical distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination in employment is repulsive to legislative enactments, in amounts to be determined at trial;

    iii. Attorneys' fees, costs, and expenses as provided for by the applicable

statutes; and

    iii. Any other relief which this Court deems just and proper.

| | | |
|---|---|---|
| Dated: | January 7, 2019<br>Rochester, New York | UNDERBERG & KESSLER LLP<br><br>/s/ Paul F. Keneally<br>_____<br>Paul F. Keneally, Esq.<br>Alina Nadir, Esq.<br>Attorneys for Plaintiff Barbara Bresnan<br>300 Bausch & Lomb Place<br>Rochester, New York 14604<br>Telephone: (585) 258-2800<br>pkeneally@underbergkessler.com<br>anadir@underbergkessler.com |

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Buffalo Status Line: (866) 408-8075
Buffalo Direct Dial: (716) 551-4442
TTY (716) 551-5923

John E. Thompson, Jr.
Director

Charge Number

**525-2015-00155**

Barbara Bresnan                                      **Charging Party**
109 Camelot Drive
Rochester, NY 14623

Town of Henrietta                                    **Respondent**
475 Calkins Road
Henrietta, NY 14467

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under the Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). All requirements for coverage have been met.

Charging Party, who has been employed by Respondent since 2001 and is currently a Maintenance Mechanic III, alleges that beginning in 2014, and continuing, Town Supervisor Jack Moore has made inappropriate comments and gestures to her and a class of female employees. Specifically, Charging Party who is a lesbian alleges that Town Supervisor Moore has commented on her appearance, including stating, "tell me she don't just look like a guy". Charging Party also alleges that Town Supervisor Moore has engaged in conduct to intimidate her. Specifically, Charging Party alleges that on September 20, 2014, he drove his vehicle toward her while she was directing traffic; Charging Party alleges that he swerved less than three feet in front of her and stated, "oops, see, I'm nice, I missed you". Charging Party alleges that because of her gender, she has been denied equal terms, conditions and privileges afforded other employees. Charging Party alleges that she has been assigned more work and has been subject to greater scrutiny. Charging Party alleges that when she complained to Respondent's Human Resources representative regarding the discriminatory treatment she faced, she was advised that the representative could not investigate.

Respondent denies that Charging Party was discriminated against or retaliated against. Respondent alleges that Charging Party has suffered no adverse action. Respondent maintains that Charging Party is "difficult to work with" and her unsatisfactory performance led to her being reassigned from the Town Hall building. Respondent denies any discriminatory comments or conduct attributed to Town Supervisor Jack Moore. Respondent acknowledges that on or about September 20, 2014, Town Supervisor Moore, while pulling into an entrance (with his vehicle) where Charging Party was directing traffic, stated "see, I'm a nice guy, I missed you". Respondent acknowledges that on or about November 12, 2014, Charging Party made a complaint that Town Supervisor Moore was discriminating against her and that she was "scared".

The investigation establishes that in April 2014, Charging Party, who is female and a lesbian, was removed from her assignment at the Town Hall building and replaced by a male employee. The evidence did not support Respondent's contention that Charging Party was removed from her assignment at the Town Hall Building because of unsatisfactory performance. The record illustrated that Charging Party had received positive evaluations regarding her work. Significantly, during the investigation, Town Supervisor Moore provided that a male employee was assigned to the Town Hall building, because "being a man, he was able to do certain things that Barb couldn't do", such as use a ladder. Town Supervisor Moore's statements defied logic and lacked credibility, where, it was undisputed that Charging Party had been working as a Maintenance Mechanic III since 2012. Most importantly, however, Town Supervisor Moore's words provide direct evidence of his bias towards Charging Party (and other female employees) because of sex. Evidence produced during the investigation also supported Charging Party's contentions that she was denied overtime opportunities in favor of male employees and was assigned out-of-title work because of her gender/gender stereotypes. Therefore, there was sufficient evidence to conclude that Charging Party was denied equal terms, conditions and privileges of employment because of sex.

Evidence produced during the investigation illustrated that Charging Party was subject to unwelcome comments and conduct in the workplace because of sex. During the investigation, Charging Party credibly provided that in or about March 2014, Town Supervisor Moore commented to a co-worker, "maybe you could take Barb shopping... she could use some help" and also provided that she overheard him comment (to the then-Human Resources representative), "tell me she don't just look like a guy". Although Respondent's representatives denied any such comments were made, statements of witnesses confirmed that Town Supervisor Moore repeatedly made statements concerning Charging Party's appearance and dress (such as "she might as well be a man... because can't tell she's a woman"). Supervisor Moore's comments regarding Charging Party displayed an intense animosity towards her based on sex/sex stereotyping. When viewed through this prism, his acknowledged conduct on September 20, 2014, can only been seen as an effort to intimidate Charging Party. Importantly, it was evident from the record that Charging Party's health was affected by the comments/conduct in the workplace to such an extent as to necessitate a medical leave beginning in September 2015. Therefore, there was sufficient evidence to conclude that Charging Party was subject to a hostile work environment because of sex.

To be noted, the record indicates that Town Supervisor Moore also made derogatory and sex-based comments to other female employees. The investigation reveals that Town Supervisor Moore's comments were not limited to the Charging Party or other females; the evidence illustrates that the Town Supervisor Moore also made discriminatory and derogatory comments concerning the disabled and African-Americans.

It was undisputed that on or about November 12, 2014, Charging Party made an internal sex discrimination complaint to Respondent and on December 2, 2014, it received notice of her charge with the Commission. The record indicates that when subsequently taking medical leave Respondent invoked the state's civil service law and required her to undergo an Independent Medical Exam (IME) before it would allow her to return to work as scheduled. The evidence illustrates that Respondent had not previously required Charging Party to undergo an IME when returning from a prior medical leave. The evidence also illustrates that Respondent has not required employees who have not engaged in protected activity to undergo an IME when returning from a medical leave. Hence, there was a nexus between Charging Party's complaints and Respondent's adverse treatment, which resulted in a loss of pay. Additionally,

the investigation reflects that beginning in 2015, Charging Party's son, who had been a seasonal worker for Respondent, has not been re-hired. Respondent failed to provide a legitimate reason for denying him employment and there was evidence to indicate that it took similar actions with respect to other employees who had engaged in protected activity. Therefore, there was sufficient evidence to conclude that Charging Party was retaliated against for opposing Respondent's discriminatory conduct.

The investigation establishes that even prior to Charging Party's efforts to report the Town Supervisor's conduct and comments, Respondent knew about his discriminatory behavior (and the behavior of his subordinates). The evidence clearly illustrates that at the time Charging Party filed her internal complaint in November 2014, Respondent's representatives had no intention of conducting a meaningful or effective investigation into her complaints. Significantly, Respondent has failed and continues to fail to take reasonable care to prevent and correct the harassment by Town Supervisor Moore and other employees acting on his behalf.

The investigation finds that Respondent does not have a Human Resources Department or a full-time Human Resources professional to address equal employment opportunity matters or reasonable accommodations for employees with disabilities. The record reflects that the employees assigned "human resources" tasks have often been employees whose titles have included, "Director of Finance" and "Payroll Clerk". The evidence illustrates that these individuals possess little knowledge of equal employment opportunity issues. Additionally, statements of the parties demonstrate that those responsible for equal employment opportunity matters are constrained by an organizational system, where the primary discriminator/harasser retains authority and control over their employment. Moreover, Respondent representatives' admitted failure to take action regarding internal discrimination complaints, has without question, prevented employees from reporting possible discriminatory conduct by the Town Supervisor (and others). Furthermore, Town Supervisor Moore's intentional acts of retaliation against Charging Party and others engaging in protected activity, creates a chilling effect on potential harmed parties reporting discrimination and obstructs the Commission in its mission to eradicate discrimination in the workplace.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent discriminated against Charging Party and a class of female employees because of sex. Charging Party was subject to continued harassment because of her gender/gender stereotyping and was also subject to unequal terms, conditions and privileges of employment afforded other employees. Following her opposition to Respondent's discriminatory conduct, Charging Party was retaliated against. Employees who also engaged in activity protected under the statutes enforced by the Commission, were also subject to retaliation.

This determination is final. The statutes require that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with Section 1601-26 of the Commission's Procedural Regulations. When the Respondent declines to enter settlement discussion, or when the Commission's representative is unable to secure settlement acceptable to the Director, the Director shall so inform the parties, in writing, and advise them of the court enforcement alternative available to the Charging Party, the aggrieved persons and the Commission.

On behalf of the Commission:

SEP 2 6 2017
Date

John E. Thompson, Jr.
Director

Cc:

Respondent's Attorney
Patrick Naylon, Esq.
James M. Paulino II, Esq.
Goldberg Segalla, LLP
2 State Street, Suite 1200
Rochester, NY 14614

# EXHIBIT B

**U.S. Department of Justice**

Civil Rights Division

JMG:KDW:KLF
DJ 170-53-160

Employment Litigation Section - PHB
950 Pennsylvania Avenue, NW
Washington, DC 20530
www.usdoj.gov/crt/emp

OCT 10 2018

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL 7003 0500 0002 5071 6738
RETURN RECEIPT REQUESTED

Ms. Barbara A. Bresnan
109 Camelot Drive
Rochester, NY 14623

      Re:    Barbara A. Bresnan v. Town of Henrietta
              EEOC Charge No. 525-2015-00155

Dear Ms. Bresnan:

    It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

    You are hereby notified that conciliation in this matter was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

    Therefore, you should consult an attorney of your own choosing at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 41 U.S.C. 2000e-5(f)(1).

    We are returning the files in this matter to EEOC's Buffalo Local Office. If you or your attorney have any questions concerning this matter or wish to inspect the investigative files, please feel free to address your inquiry to: John E. Thompson, Jr., Director, EEOC, 6 Fountain Plaza, Ste. 350, Buffalo, NY 14202.

                                   Sincerely,

                                   John M. Gore
                                   Acting Assistant Attorney General
                                   Civil Rights Division

                By: _____
                                   Karen D. Woodard
                                   Principal Deputy Chief
                                   Employment Litigation Section

cc:    Town of Henrietta
       Patrick B. Naylon, Esquire
       EEOC, Buffalo Local Office